UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:

TERRELL Q. WALKER             Case No. 22-31612 JDA
                                             Chapter 7
                 Debtor.                      Hon. Joel Applebaum
_____/

## OPINION AND ORDER HOLDING CREDIT ACCEPTANCE CORP. AND LLOYD & McDANIEL IN CONTEMPT AND GRANTING COMPENSATORY AND PUNITIVE DAMAGES

This matter is before the Court on Debtor's "Motion Seeking Contempt Remedies Against Credit Acceptance Corp. and Lloyd & McDaniel PLC for Violations of the Discharge Injunction" (the "Motion"). For the following reasons, Debtor's Motion is GRANTED. Debtor is entitled to his reasonable attorneys' fees and costs (in an amount to be determined pursuant to the instructions below), compensatory damages for emotional distress in the amount of $750, and punitive damages in the amount of $1,000.

I.

FACTUAL BACKGROUND

In March 2019, Debtor financed the purchase of an automobile through Credit Acceptance Corporation ("CAC"). Debtor was unable to make regular payments to CAC and fell $9,000 behind in his payments. In the summer of 2020, Debtor

surrendered the car to CAC. CAC, through its counsel, Lloyd & McDaniel (L&M), brought a lawsuit to collect on the automobile debt against Debtor in the 67-5 District Court in Flint, Michigan. On or about October 28, 2022, before the petition was filed initiating this case, CAC obtained a default judgment against Debtor in the approximate amount of $9,000.

On October 31, 2022, Debtor filed for chapter 7 bankruptcy. Debtor included CAC on his bankruptcy Schedule E/F and both CAC and L&M were served with notice of Debtor's bankruptcy.

On February 6, 2023, Debtor's chapter 7 case was "closed without discharge" because Debtor had not filed his Official Form 423, Certification About a Financial Management Course. Ten months later, on November 6, 2023, Debtor moved to reopen his case to file his Form 423. The Court granted Debtor's motion to reopen and Debtor's Order of Discharge was issued on the same day. CAC and L&M were properly served with notice of Debtor's discharge.

On January 29, 2024, CAC, through its counsel L&M, filed a Request and Writ for Garnishment in the 67-5 District Court in Flint, Michigan. Sometime thereafter, Debtor learned of the Writ.

On February 20, 2024, Debtor called L&M to inform it of his bankruptcy discharge and that the automobile debt had been discharged. According to Debtor, the L&M representative told him that L&M and CAC would not acknowledge

Debtor's bankruptcy discharge unless they were presented with a copy of the discharge order and referred Debtor to his counsel. While it is disputed whether the L&M representative told Debtor that they would only accept a copy of the discharge order if it were presented by Debtor's counsel, it is undisputed that Debtor spoke with a representative of L&M and informed the representative of the entry of the discharge order.

Believing that L&M would only accept a copy of the discharge order if it were presented by counsel, Debtor sought and hired counsel.[1] On February 28, 2024, Debtor's counsel advised L&M via email that Debtor had received a bankruptcy discharge and that it should instruct CAC to halt any planned garnishment against Debtor.

The very next day, February 29, 2024, L&M submitted a garnishment release to the 67-5 Judicial District Court. The district court processed the Garnishment Release on March 8, 2024 and, on that same day, it was mailed by the deputy court clerk, via first class mail, to Debtor and Debtor's employer.

On March 4, 2024, L&M responded to Debtor's counsel's February 28th email, assuring Debtor's counsel that L&M had requested a release of the garnishment against Debtor and offered "minor" compensation to Debtor for his

---

[1] Debtor had bankruptcy counsel in Michigan who handled his case through discharge. No reason was given why new counsel was retained.

troubles. Debtor rejected this offer of compensation and presented L&M with a counteroffer, to which L&M did not respond, although additional discussions did take place.

On March 8, 2024, the district court issued its Garnishment Release. Notwithstanding the Garnishment Release, $173.10 was garnished from Debtor's wages on March 20, 2024.

In its responsive pleading, L&M stated that it promptly refunded to Debtor the $173.10 that had been garnished from Debtor's wages. Debtor stated that, as of June 6, 2024, the $173.10 had not yet been returned to him. At the hearing on this Motion held on July 10, 2024, it was learned that the reimbursement check was mailed to Debtor's former counsel who, as of July 10, 2024, had not delivered the check to Debtor.[2]

On May 8, 2024, Debtor filed this Motion seeking contempt sanctions against CAC and L&M for violating the discharge injunction. Specifically, Debtor seeks attorneys' fees, compensatory damages for emotional distress, and punitive damages. In support of his Motion, Debtor attached an affidavit which states, in part:

---

[2] Presumably the check has now been delivered or L&M has cancelled the check and issued a new check to Debtor. If the check has not been delivered or a new check issued (or if this issue is not addressed promptly after receipt of this Opinion and Order), additional damages may be warranted.

5. Almost a year and a half after filing for bankruptcy protection, I received legal papers in or around February 2024 indicating that CAC and Lloyd & McDaniel PLC: a) had moved forward to request and obtain a default judgment against me after I was discharged in bankruptcy [the Court notes that the default judgment was, in fact, obtained prior to Debtor filing his bankruptcy petition] and 2) was further seeking to collect the Automobile Debt by garnishing my wages.

6. I was extremely distressed upon learning that my wages were about to be garnished, as I had previously been assured by my bankruptcy attorneys that my personal liability for the Automobile Debt had been erased when I was discharged from Chapter 7 bankruptcy. I knew that there was no way I would be able to repay the $9,000 Automobile Debt – that debt was the primary reason why I filed for bankruptcy in the first place. Now, despite successfully following bankruptcy procedures, and receiving my discharge, I began to fear that I had done something wrong, and that I would have to, somehow, repay the Automobile Debt. After all, this wasn't a simple debt collection call, but a court document with a judge's signature telling me that CAC is allowed to take money out of my paychecks in order to pay the Automobile Debt. I was angry, stressed, embarrassed, and began to lose sleep over the whole situation, worrying about what I could (or should) do.

7. Soon after being served with these papers, I called Lloyd & McDaniel on or about February 20, 2024, and attempted to tell them that I had been discharged from bankruptcy back in November 2023. The Lloyd & McDaniel representative I spoke with, however, was extremely dismissive and rude; essentially telling me that they didn't believe I had ever received a bankruptcy discharge. I offered to send them copies of my bankruptcy paperwork, but was informed that Lloyd & McDaniel would only accept such documents from my attorney.

8. As I did not have an attorney representing me at that time, I quickly sought and secured counsel in order to comply with Lloyd & McDaniel's instructions.

9. Despite this, on or about March 20, 2024, CAC garnished my wages in the amount of $173.10.

    10. This garnishment caused me a great deal of stress and worry as I could not understand why my wages were being garnished to pay off the Automobile Debt, when my bankruptcy attorneys had assured me when I received my discharge that I was no longer responsible in any way for the Automobile Debt. Both myself personally, and later my attorneys, even communicated with Lloyd & McDaniel to prove that the Automobile Debt was discharged, but my wages were garnished a few weeks later anyways. Obviously, losing a significant portion of my wages caused me great worry, as I rely on that money to provide for myself and my household.

  On May 30, 2024, L&M and CAC filed a Response to Debtor's Motion. In their Response, L&M and CAC argued that, if any violation of the discharge injunction occurred, it was the result of an unintentional and aberrant occurrence and was promptly rectified. L&M and CAC then requested its attorneys' fees and costs *against Debtor* for having to respond to the contempt Motion.

  On June 6, 2024, Debtor filed a Reply to the Response and, on July 10, 2024, a hearing was held on the Motion.

II.

ANALYSIS

  With certain exceptions, upon receiving a bankruptcy discharge under 11 U.S.C. § 727(a), a debtor is relieved from payment of all pre-petition debts. Section 524(a)(2) of the Bankruptcy Code enjoins a creditor from undertaking any action to collect or recover on any discharged debts.

Bankruptcy courts enforce § 524 through civil contempt proceedings. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421-422 (6th Cir. 2000)("[A] debtor's only recourse for violation of the discharge injunction is to request that the offending party be held in contempt of court."). Bankruptcy courts have civil contempt powers which "flow from Bankruptcy Code § 105(a) and the inherent power of a court to enforce compliance with its lawful orders." *In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001) (citations omitted).

The requirements for finding a party in contempt for violating the discharge injunction were updated in the Supreme Court's decision in *Taggart v. Lorensen*, 139 S.Ct. 1795 (2019). Under *Taggart*, a court may find a party in civil contempt if: (1) the party violated a definite and specific order of the court requiring him or her to perform or refrain from performing a particular act or acts; (2) the party did so with knowledge of the court's order; and (3) there is no fair ground of doubt as to whether the order barred the party's conduct — i.e., no objectively reasonable basis for concluding that the party's conduct might be lawful. *Id*. at 1799; *In re Weaver*, No. 17-32042, 2023 WL 3362064, at *6 (Bankr E.D. Mich., May 10, 2023); *In re City of Detroit*, 614 B.R. 255, 265 (Bankr. E.D. Mich. 2020); *Orlandi v. Leavitt Family Ltd. P'ship (In re Orlandi)*, 612 B.R. 372, 382 (6th Cir. BAP 2020). The moving party must prove at least the first two elements by clear and convincing evidence. *City of Detroit*, 614 B.R. at 266.

This Court finds that L&M's and CAC's conduct meets the first two elements under *Taggart* because the subject garnishment clearly violated Debtor's discharge order and L&M and CAC each had knowledge of the discharge order. This leaves the following issues remaining: (1) whether the parties had a fair ground of doubt that their collections actions on the now-discharged automobile debt were barred; and (2) if so, what sanctions, if any, should be imposed.

A. Civil Contempt

This Court finds that L&M and CAC should be held in civil contempt for its violation of the discharge injunction because there was no fair ground of doubt that their collections actions on the discharged automobile debt were barred by Debtor's discharge order. First, L&M and CAC were served with the notice of Debtor's bankruptcy discharge on November 7, 2023. While there may have been some confusion due to Debtor's case being initially "closed without discharge," L&M and CAC were subsequently served with Debtor's discharge order and had more than adequate notice thereof.

Second, despite having been served in November 2023 with written notice of Debtor's discharge, on January 29, 2024, CAC, through its counsel L&M, filed a Request and Writ for Garnishment with the 67-5 District Court in Flint, Michigan in an attempt to collect on the now-discharged debt. On February 20, 2024, after learning of the garnishment, Debtor orally informed L&M that he had received a

discharge of his debt to CAC. Oral notice of a bankruptcy filing is sufficient where it would cause a reasonably prudent person to make further inquiry. *Murphy v. Deal Auto (In re Murphy)*, Nos. 13-31348, 13-3058, 2014 Bankr. LEXIS 1068, at *6 (Bankr. N.D. Ohio, March 19, 2014). Debtor's telephone call to L&M was sufficient to put L&M yet again on notice that it was violating the discharge injunction.

While the Court acknowledges that L&M promptly acted to release the garnishment once it received a copy of the discharge order from Debtor's newly-hired counsel, its actions occurred four months after it had initially received notice of Debtor's discharge and nine days after being orally notified by Debtor that he had received a discharge of that debt. L&M's prompt actions once it received a copy of Debtor's discharge order from Debtor's new counsel does not preclude against a finding of civil contempt, but it is relevant as to the amount of damages Debtor may be entitled to for such a violation.

B. Damages for Civil Contempt

Having determined that L&M and CAC are in civil contempt for their violations of the discharge order, the Court is tasked with determining the appropriate amount of damages, if any, to impose on L&M and CAC for these violations. The Sixth Circuit has approved the award of compensatory damages and mild punitive damages in cases involving the violation of the discharge injunction. *In re Berry*, 2022 WL 4115752, *18 (6th Cir. BAP, September 9, 2022); *In re John*

*Richards Home Bldg. Co.*, 552 F. Appx. 401, 412 (6th Cir. 2013) (court limits punitive damages to "mild" damages but declines to draw a bright line as to what constitutes a "serious" sanction). This Court has "broad discretion ... in selecting an appropriate sanction" for a violation of the discharge injunction," *Badovick v. Greenspan (In re Greenspan)*, 464 B.R. 61, No. 10-8019, 2011 WL 310703, at *5 (6th Cir. BAP, Feb. 2, 2021), which will not be set aside absent an abuse of discretion. *In re Bagsby*, 40 F.4th 740, 746 (6th Cir. 2022).

1. <u>Compensatory Damages for Attorneys' Fees</u>

If a bankruptcy court finds a creditor in civil contempt for violating the discharge injunction, that court has the discretion to award the debtor actual compensatory damages, including attorney fees and costs. *Miller v. Chateau Communities, Inc. (In re Miller)*, 282 F.3d 874, 875 (6th Cir. 2002). In this case, Debtor is entitled to recover reasonable attorney fees for his counsel's work, including his informal efforts to address this matter and costs incurred in bringing and litigating this Motion. Because this Court may only grant *reasonable* attorneys' fees and costs,[3] Debtor's counsel is ordered to file with the Court and serve on CAC and L&M a detailed, itemized statement of fees and costs for review by August 2,

---

[3] The burden of proof is on counsel seeking compensation, *In re Ulrich*, 517 B.R. 77, 80 (Bankr. E.D. Mich. 2014), utilizing the test in *Boddy v. United States Bankruptcy Court (In re Boddy)*, 950 F.2d 334 (6th Cir.1991), as refined by section 330 of the Bankruptcy Code.

2024. CAC and L&M may file objections to this fee statement by August 16, 2024. If objections are timely filed, the Court will schedule an expedited hearing. Frivolous charges or frivolous objections may result in a reduction or addition to the fees requested, as the case may be.

## 2. Compensatory Damages for Emotional Distress

There is currently a disagreement among courts across the circuits on whether damages for emotional distress may be awarded in cases involving a violation of the discharge injunction. While the Sixth Circuit has not yet weighed in on the matter, *In re Barry*, 2022 WL 4115752, *19 *citing In re Cantrell*, 605 B.R. 841, 858 n. 8 (Bankr. W.D. Mich. 2019), lower courts within the Sixth Circuit, including this Court, have awarded damages for emotional distress in cases involving a violation of the discharge injunction. *See, Weaver*, No. 17-32042, 2023 WL 3362064, at *7; *In re Perviz*, 302 B.R. 357, 371 (Bankr. N.D. Ohio 2003); *In re Jones*, 603 B.R. 325, 331-332, 335 (Bankr. E.D. Ky. 2019) (emotional distress damages awarded based solely on Debtor's testimony regarding how creditor's actions post-discharge caused her "tremendous stress and embarrassment ... as well as the erosion of her familial relationships."). Courts in other circuits have similarly awarded damages for emotional distress for violations of the discharge injunction. *Nibbelink v. Wells Fargo Bank, N.A. (In re Nibbelink)*, 403 B.R. 113 (Bankr. M.D. Fla. 2009) (emotional distress damages for assessing invalid fees during chapter 13 case and

falsely reporting mortgage as delinquent on credit report); *Gervin v. Cadles of Grassy Meadows II, L.L.C. (In re Gervin)*, 337 B.R. 854 (Bankr. W.D. Tex. 2005); *Atkins v. United States (In re Atkins)*, 279 B.R. 639 (Bankr. N.D.N.Y. 2002). *But see, In re Walter*, 868 F.2d 665, 670 (4th Cir. 1989)("no authority is offered to support the proposition that emotional distress is an appropriate item of damages for civil contempt"). As previously noted, this Court agrees with those courts that hold an award of damages for emotional distress is appropriate for violations of the discharge injunction.

Having concluded that Debtor may recover damages for emotional distress resulting from the violation of the discharge injunction, there appears to be a further split in authority as to the amount or type of proof of injury required to support such an award. One line of cases requires corroborating evidence to support allegations of emotional distress, as well as a close causal connection between the act and the emotional harm suffered. *In re Barry*, 2022 WL 4115752, *19, *citing In re Cantrell*, 605 B.R. at 858 n. 8; *McCool v. Beneficial (In re McCool)*, 446 B.R. 819, 824 (Bankr. N.D. Ohio 2013) *abrogation on other grounds recognized by In re Orlandi*, 612 B.R. 372.

A second line of cases, which this Court previously adopted, holds that the only hurdle to an award of emotional distress damages is proof that there is emotional harm that qualifies for an award of actual damages, and that there is a

causal link between the violation of the discharge injunction and the resulting injury. *Weaver*, 2023 WL 3362064 at *8; *Perviz*, 302 B.R. at 371. These courts have allowed compensatory damages for emotional distress, absent any demonstrable out-of-pocket expenses, if two conditions are met: (1) the debtor clearly suffered some appreciable emotional and/or psychological harm; and (2) the actions giving rise to the distress were sufficiently severe in nature. *Id*. The two factors are balanced: the greater the extent of the creditor's violations, the less corroborating evidence will be needed to establish compensable emotional distress. *Id*. Conversely, the less severe the creditor's conduct, the more important corroborating evidence will become to sustain a request for compensatory damages for emotional/mental distress. *Id*. Corroborating evidence, such as actual medical testimony, is helpful but not always needed. *Id*., *citing In re Poole*, 242 B.R. 104, 112 (Bankr. N.D. Ga. 1999). In other words, if the creditor's conduct is sufficiently egregious or extreme that one would normally expect emotional distress to occur, then a court may allow such damages without requiring additional evidence if it finds the debtor's testimony to be credible. *Weaver*, No. 17-32042, 2023 WL 3362064, at *8.

    The cases also reflect a wide range of amounts awarded for compensatory damages for emotional distress for violations of the discharge injunction. *Compare*, *Weaver*, No. 17-32042, 2023 WL 3362064, at *8 (court awarded debtor $25,000 for emotional distress for collection efforts that spanned six years and were vicious and

threatening in nature); *Jones*, 603 B.R. at 331-332, 335 (court awarded debtor $2,500 for emotional distress for violations of the discharge injunction based solely on debtor's testimony regarding how creditor's actions caused her "tremendous stress and embarrassment ... as well as the erosion of her familial relationships."); *Atkins v. U.S.A. (In re Atkins),* 279 B.R. 639, 644 (Bankr. N.D.N.Y. 2002)(compensatory damages of $30,000 for emotional distress awarded for violation of the discharge injunction); *Poole*, 242 B.R. at 112 (compensatory damages in the amount of $1,200 for emotional distress awarded for violation of the discharge injunction because the garnishment of debtor's wages so long after entry of Debtors' bankruptcy discharge was shocking and humiliating) with *In re Sorensen*, 2022 WL 2718871, *11-12 (Bankr. N.D. Ill., July 13 2022)("the injured party must show 'demonstrable emotional distress, not just point to circumstances ... which might support an inference of such injury.' "); *In re Fauser*, 545 B.R. 907, 913 (Bankr. S.D. Tex. 2016)("[h]urt feelings, anger and frustration are part of life, and are not the types of emotional harm that could support an award of damages.")

In this case, Debtor averred under oath that he was extremely distressed when he learned that his wages were going to be garnished because he had been assured by his bankruptcy attorney that his liability on his former automobile had been erased and discharging that debt had been his primary reason for filing for bankruptcy in the first place. (Dkt. No. 28, Affidavit, ¶ 6). Debtor also stated that he

became very concerned that he had "done something wrong" and would have to repay that debt. (Id., ¶ 6). He was further concerned that there was a court document with a judge's signature allowing CAC to garnish his wages. (Id., ¶ 6). Debtor states, "I was angry, stressed, embarrassed, and began to lose sleep over the whole situation, worrying about what I could (or should) do." (Id., ¶ 6). Debtor's legitimate concerns were further exacerbated when L&M's representative was allegedly dismissive and rude and told him that L&M would only accept proof of his discharge from his attorney (Id., ¶ 7), thereby necessitating Debtor to retain an attorney to represent him in this matter. (Id., ¶ 8). Adding insult to injury, and despite having hired counsel who successfully obtained a release of the garnishment, on or about March 20, 2024, Debtor's wages were nevertheless garnished in the amount of $173.10. (Id., ¶ 9). Debtor further states, "losing a significant portion of my wages caused me great worry, as I rely on that money to provide for myself and my household." (Id., ¶ 10).

Based on Debtor's affidavit, including his credible concerns for the financial well-being of his family, the Court finds that Debtor suffered appreciable emotional distress. Moreover, given the multiple times L&M and CAC were informed of Debtor's discharge order, L&M and CAC's actions in ignoring that order were sufficiently severe to warrant granting Debtor some compensation for his emotional distress. The difficultly here is that, while Debtor may have been "distressed" and "concerned" that his wages would be garnished, he was not subject to harassing

telephone calls, threats, dunning letters and the like which typically justify a significant damage award. *See e.g., Weaver*, No. 17-32042, 2023 WL 3362064, at *8 (debtor awarded $25,000 for emotional distress for collection efforts spanning six years and which were vicious and threatening in nature). Moreover, the actual garnishment of $173.10 occurred after L&M obtained the Garnishment Release. To this Court's mind, it is not appropriate to sanction CAC and L&M for the actual wage garnishment when the garnishment was done in violation of the Garnishment Release which L&M promptly arranged. For this reason, this Court grants Debtor compensatory damages in the amount of $750 for his emotional distress.

3. <u>Punitive Damages</u>

Unlike compensatory damages, punitive damages serve the same purpose as criminal penalties: to punish a party for their wrongful conduct and to deter further conduct of that same nature. *Perviz*, 302 B.R. at 372 *citing Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 307 fn. 9 (1986). "In situations where this policy function would be furthered, most court decisions have held, and this Court subscribes to the legal tenet, that bankruptcy courts have the inherent power to punish parties for their contemptuous violation of the discharge injunction through the imposition of punitive damages." *Id*. However, punitive damages are typically imposed only when there is some sort of nefarious or otherwise malevolent conduct. *Stachura*, 477 U.S. at 307, fn. 9. Thus, in situations involving a violation of the

discharge injunction, punitive damages have been limited to circumstances where there exists a complete and utter disrespect for the bankruptcy laws. *Perviz*, 302 B.R. at 372-373; *Barry*, 2022 WL 4115752 at *20 ("a bankruptcy court is authorized to impose a sanction for violations of the discharge order."); *In re Arnold*, 206 B.R. 560, 568 (Bankr. N.D. Ala. 1997) (punitive damages warranted where creditor acted willfully and maliciously in clear disregard and disrespect of the bankruptcy laws); *But cf. In re Borowski*, 216 B.R. 922, 925 (Bankr. E.D. Mich. 1998) (where parties appeared to have been acting more out of ignorance than clear disregard and disrespect of bankruptcy laws, requisite malevolent intent to award punitive damages was lacking.)

In calibrating punitive damage awards, the Supreme Court has set forth three guideposts: (1) the degree of reprehensibility of the defendants' misconduct; (2) the disparity between actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the civil penalties authorized or imposed in comparable cases. *BMW of North American, Inc. v. Gore*, 517 U.S. 559, 575 (1996).

### a. Degree of Reprehensibility

In this case, L&M and CAC were both served with written notice of Debtor's discharge and chose to ignore Debtor's oral representation concerning his

bankruptcy discharge. Further, considering L&M and CAC's familiarity with bankruptcy law, their overall size, revenue, and sophistication, their failure is not in conformance with bankruptcy standards. Counsel's statements at the July 10, 2024 hearing that he has been asked to review CAC's and L&M's procedures in an effort to prevent similar future occurrences is laudable. While a subsequent review and, hopefully, correction of procedures does not obviate the harm suffered by Debtor, it does indicate that the contemptuous conduct was, at least, less reprehensible.

### b. The Disparity Between Actual or Potential Harm Suffered by Debtor and the Punitive Damages Award

This Court has already ruled that Debtor's actual compensatory damages are valued at $750, plus reasonable attorney's fees. Against these figures, this Court will consider the amount of punitive damages to award in this case.

### c. Civil Penalties Imposed in Comparable Cases

The Sixth Circuit has held that bankruptcy courts do not have general statutory power to impose serious noncompensatory damages. *John Richards Homes Bldg. Co.*, 552 Fed. Appx. at 415. However, courts in this Circuit can impose "mild" noncompensatory damages. *Id.; Franklin Credit Mgmt Corp. v. Cook*, 551 B.R. 613, 625 (M.D. Tenn. 2016)(implying that the bankruptcy court's imposition of a $5,000 sanction on a corporate defendant was "mild"); *In re Biery*, 543 B.R. 267, 300 (Bankr. E.D. Ky. 2015)(court authorized imposition of "mild" noncompensatory damages in upcoming class action lawsuit).

In *In re Berry*, a Sixth Circuit BAP opinion, the court sanctioned the creditor $1,000 for each communication which violated the discharge order and $100 per day for the creditor's failure to take effective corrective action in response to the discharge order, its obligations under the Bankruptcy Code, and the objectively clear proof that the debt was discharged. The total amount of punitive damages totaled $10,300 which the court found was a mild sanction. *In re Berry*, 2022 WL 4115752, *20. *See e.g., Jones*, 603 B.R. at 335 (Debtor awarded mild non-compensatory damages of $7,500); *Perviz*, 302 B.R. at 374 ($8,000 in punitive damages awarded); *cf. John Richards Home Bldg. Co.*, 552 F. Appx. at 416 (declining to draw a bright line for what constitutes a "serious" sanction because the $2.8 million awarded against an individual was "serious under any definition"); *In re Ridley*, 572 B.R. 352, 366 (Bankr. E.D. Okla. 2017)(court awarded $12,000 in punitive damages determined by sanctioning the bank $1,000 for each month that the bank failed to reflect the correct status of debtor's account post-discharge); *In re Mooney*, 340 B.R. 351, 362 (Bankr. E.D. Tex. 2006)(damage assessment against Green Tree in the amount of $40,000.00 is an appropriate award of punitive damages).

L&M and CAC willfully violated Debtor's discharge injunction. To protect all debtors and maintain the integrity of the bankruptcy process, violations of the discharge injunction must have consequences in order to deter such behavior, even where such behavior may have been without malice, but also without explanation.

For these reasons, punitive damages are assessed against CAC & L&M in the amount of $1,000.

III.

ORDER

Accordingly, for the reasons set forth above,

IT IS HEREBY ORDERED that Debtor's Motion is GRANTED.

IT IS FURTHER ORDERED that Debtor is awarded the following damages against CAC and L&M, jointly and severally:

- o compensatory damages for Debtor's attorney's fees and costs to be finalized upon submission of itemized fee statement for review as to reasonableness (*see, supra*, § II., ¶ A(i) for deadlines);
- o compensatory damages for emotional distress in the amount of $750; and
- o punitive damages in the amount of $1,000.

**Signed on July 17, 2024**



/s/ Joel D. Applebaum

**Joel D. Applebaum
United States Bankruptcy Judge**