UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

TERRELL Q. WALKER,             Case No. 22-31612 JDA
                                                                    Chapter 7
                         Debtor.               Hon. Joel Applebaum
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART THE OBJECTION FILED BY CREDIT ACCEPTANCE CORP. AND LLOYD & McDANIEL PLC TO CONSUMER ATTORNEYS, P.C.'S ITEMIZED STATEMENT OF FEES AND COSTS

The matter before the Court is the objection (the "Objection") filed by Credit Acceptance Corp. and Lloyd & McDaniel PLC to Consumer Attorneys, P.C.'s Itemized Statement of Fees And Costs. For the reasons set forth below, Movants' Objection is GRANTED IN PART and DENIED IN PART.

I.

FACTUAL BACKGROUND

On July 17, 2024, this Court issued its Opinion and Order Holding Credit Acceptance Corp. and Lloyd & McDaniel ("Movants") in Contempt and Granting Compensatory and Punitive Damages. The Contempt Order provided that Debtor's attorneys, Consumer Attorneys, PLC ("Consumer Attorneys") may file a "detailed,

itemized statement of fees and costs for review by August 2, 2024." (Dkt. No. 41, pp. 10-11). This Court further cautioned the parties that "[f]rivilous charges or frivolous objections may result in a reduction or addition to the fees requested, … ." (*Id*. at p. 11).

On August 1, 2024, Consumer Attorneys filed a statement of fees and costs, seeking $15,042.50 for fees and $173.00 for costs. (Dkt. No. 42, Ex. 1).

On August 15, 2024, Movants filed an objection to Consumer Attorneys' statement of fees and costs. (Dkt. No. 43).

On September 11, 2024, the Court held a hearing on Movants' Objection, following which the Court took the matter under advisement.

II.

ANALYSIS

Compensation in bankruptcy matters is governed by 11 U.S.C. § 330(a)(3) and (4) which provide as follows:

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A) Except as provided in subparagraph (B), the court shall not allow compensation for—

(i) unnecessary duplication of services; or

(ii) services that were not—

(I) reasonably likely to benefit the debtor's estate; or
(II) necessary to the administration of the case.

In the Sixth Circuit, the lodestar method must be used in calculating the amount of the fees to be awarded under § 330. *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991). As the District Court explained in the case *In re The Village Apothecary, Inc.*, No. 18-11932, 2019 WL 5483583 (E.D. Mich. August 23, 2019), "[w]hen determining the amount of attorney's fees to award in a bankruptcy case pursuant to 11 U.S.C. § 329, 330, the bankruptcy court must '[a]t a minimum ... expressly calculate the lodestar amount.'" *In re Boddy*, 950 F.2d 334, 338 (6th Cir. 1991). The lodestar amount "is calculated by 'multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended.'" *Id*. at 337. Once the bankruptcy

3

court calculates the lodestar, it "may exercise its discretion to consider other factors such as the novelty and difficulty of the issues, the special skills of counsel, the results obtained, and whether the fee awarded is commensurate with fees for similar professional services in non-bankruptcy cases in the local area." *Id*. at 338 (citation omitted). But "[i]n many cases, these factors will be duplicative if the court first determines the lodestar amount because the lodestar presumably subsumes all of these factors in its analysis of the reasonable hourly rate and the reasonable hours worked." *Id*. (internal citations omitted).

Failure to conduct the appropriate lodestar inquiry is an abuse of discretion because it constitutes an application of "an improper legal standard." *Id*. at 337. Moreover, "[w]ithout at least some discussion of the lodestar factors, the award of attorney's fees ... becomes arbitrary and unreviewable." *Id*. at 338.

The starting point in the lodestar analysis is "to determine a reasonable hourly rate. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The next step in the analysis is to determine the lawyer's reasonable hours. If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." *In re Smith*, 536 B.R. 773, 777 (Bankr. E.D. Mich. 2015), quoting *In re Williams*, 357 B.R. 434, 438–39 (6th Cir. BAP 2007) (internal citations omitted).

Regardless of whether objections are raised to the application seeking compensation from the bankruptcy estate, the Court has a duty to independently examine the reasonableness of the requested fees. *Smith*, 536 B.R. at 777. The burden of proof is on the applicant to justify the requested fees. *In re Hamilton Hardware Co., Inc.*, 11 B.R. 326 (Bankr. E.D. Mich. 1981); *Zolfo, Cooper & Co. v. Sunbeam-Oster Company, Inc.*, 50 F.3d 253, 261 (3d Cir. 1995) (in evaluating fee applications, "[t]he fee applicant has the burden of proving it has earned the fees it requests, and that the fees are reasonable.") Although in this case Consumer Attorneys is not seeking compensation from the bankruptcy estate, the Court nevertheless recognizes its independent duty to examine the reasonableness of the fees requested and on whom the burden of proof is placed.

With all of this firmly in mind, the Court turns to the four objections raised by Movants: (1) Consumer Attorneys' hourly rates for professionals are too high; (2) itemized charges are excessive (i.e., too much time spent on a particular task); (3) itemized charges are duplicative (i.e., more than one attorney charging for the same task); and (4) itemized charges include non-compensable administrative/clerical tasks. The Court will address each of these objections in turn.

First, Movants object to the high hourly rates charged by Consumer Attorneys' professionals and, during the hearing on the Objection, argued that these rates were not commensurate with local rates in this District for this type of work. Consumer

5

22-31612-jda    Doc 49    Filed 09/12/24    Entered 09/12/24 10:15:58    Page 5 of 13

Attorneys' Itemized Statement listed three attorneys and three paralegals at the following rates:

    David Chami, attorney: $725

    Sylvia Bolos, attorney: $650

    Landon Maxwell, attorney: $350

    Mari Cervantes, paralegal: $150

    Charles Fleming, paralegal: $150

    Intake, paralegal: $150

As noted, a reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Smith*, 536 B.R. at 777. This analysis requires the Court to first determine the relevant legal community, and second, to apply the prevailing market rate for that community. Movants argue that the "relevant legal community" is the community of consumer debtors' counsel located in the Eastern District of Michigan and, therefore, they object to the fee request because the hourly rates requested are well above the market rate for comparable services in consumer bankruptcy cases in the Eastern District of Michigan.[1] The Court disagrees.

---

[1] During oral argument, Movants conceded that the rate of $350 charged by Mr. Maxwell is an appropriate "market rate" but argued that it is too high for someone with Mr. Maxwell's years in practice.

This District and, indeed, this Circuit views the "relevant legal community" as something other than strictly geographical, and this has been a long-standing view. In the case *In re Baldwin-United Corp.*, 36 B.R. 401, 402-403 (Bankr. S.D. Ohio 1984), for example, Judge Newsome recognized that "to limit fees to the rates charged by Cincinnati bankruptcy lawyers, merely because these cases happened to be filed in Cincinnati, would be a position too capricious and parochial to withstand analysis under § 330." Instead, Judge Newsome applied the reasoning of Judge Bernstein in *In re Atlas Automation, Inc.*, 27 B.R. 820, 822 (Bankr. E.D. Mich. 1983), a case involving a Flint, Michigan company filed in this Court. Judge Bernstein first noted that, with the adoption of the Bankruptcy Code, "notions of economy of the estate in fixing fees are outdated." *Id*. at 822, quoting *In re Hamilton Hardware Co., Inc.*, 11 B.R. 326 (Bankr. E.D. Mich. 1981). Judge Bernstein continued:

> Each application for compensation calls for the exercise of sound discretion. It would be a mindless and therefore improper exercise of discretion to limit regional or metropolitan counsel in complicated cases to local rates allowed in routine cases. It would also disclose an insensitivity, if not resistance, to a distinct shift in Congressional attitude on professional fees. This Court is also wary that invoking a standard as subjective as the "nature, extent, and value of services" can lead to sleights-of-hand which objectively reduce regional or metropolitan attorneys to local rates by "finding" the case "routine."

*Id*. at 823.

Thus, a regional or national attorney's hourly rate is the point of departure, though admittedly not necessarily the end result. Now, "[c]ourts are free to look to

7

a national market, an area of specialization market, or any other market they believe appropriate to fairly compensate particular attorneys in individual cases." *Baldwin-United*, 36 B.R. at 403, quoting *Louisville Black Police Officers Org., Inc. v. City of Louisville*, 700 F.2d 268, 277-278 (6th Cir. 1983) (a case involving a fee award in a class action civil rights case); *In re Washington Mfg. Co.*, 101 B.R 944, 952 (Bankr. M.D. Tenn. 1989).

Concluding that the "relevant legal market" is not necessarily synonymous with the consumer bankruptcy attorneys in the Eastern District of Michigan, however, does not fully answer the more fundamental question raised by Movants' Objection: namely, are the hourly rates charged by Consumer Attorneys in this case the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation? Stated more simply, are the hourly rates charged by Consumer Attorneys in this case "reasonable?" The Court finds that they are.

First, the Court notes that, even utilizing the *Boddy* lodestar analysis, setting a reasonable hourly rate is not a precise mathematical exercise. For this reason, hourly rates approved by the Court must only be "reasonable," not exact.

And while it is true that certain of these hourly rates would be high for the representation of a debtor in a consumer bankruptcy case, the matter before this Court is a civil contempt matter regarding damages incurred by Debtor as a result of

a willful violation of the discharge injunction.[2] Because these attorneys' fees are not being paid out of the estate, there is no concern that an award of fees at higher rates will negatively impact either Debtors or Debtors' creditors. More importantly, the Court does not find the comparison to admittedly skilled consumer bankruptcy attorneys in this District to be an apt analogy. A more suitable analogy is the rates sophisticated business creditors such as Credit Acceptance Corporation pay *their* counsel, as it is these business creditors who are paying the fees and damage awards in these types of cases. This Court has previously approved rates as high as $800 per hour for debtor's counsel in business cases, and other judges in this District have approved rates exceeding $1,000 per hour. The Court is well-aware that such rates or higher are being charged to business creditors by their bankruptcy counsel. By this measure, and after the reductions in hours charged discussed below, the Court finds that the hourly rates charged in this case are reasonable.

---

[2] Movants also point out that Consumer Attorneys failed to file a Rule 2016(b) statement but does not argue that fees should be disallowed on this basis. This Court notes, however, that Consumer Attorneys was retained post-discharge, well after the case was closed, *and specifically to pursue contempt sanctions for violation of the discharge injunction against Movants*. Movants have not cited any authority for the proposition that Movants, as opposed to Debtors or the United States Trustee, even have standing to raise this issue under these circumstances. Moreover, Movants also make unsupported aspersions of improper fee sharing or the unauthorized practice of law, with the apparent intention that these aspersions will negatively impact the amount of fees awarded, but without any serious legal argument. These are the types of frivolous *ad hominin* attacks against which the Court cautioned in its Contempt Opinion and Order.

Movants' second objection relates to the amount of time it took Consumer Attorneys, 10.3 hours, to file its Motion for Contempt, suggesting that such a task should take no more than four hours. This Court disagrees. Consumer Attorneys was required to become familiar with the case and with the specific issue at hand. Under these circumstances, 10.3 hours on that task is reasonable, especially because the great majority of time was billed at Mr. Maxwell's hourly rate. Moreover, on March 8, 2024, Consumer Attorneys billed 2.5 hours for work with respect to Movants' apparent allegation, not raised in its Objection, that Consumer Attorneys was engaged in the unauthorized practice of law. Movants argue that these charges should be disallowed in their entirety because that issue has nothing to do with the violation of the discharge injunction. Again, this Court disagrees. First, the unauthorized practice of law is a serious allegation which Movants knew or should have known would necessarily be addressed by higher-level members of the law firm. Second, had the Movants not violated the discharge injunction, these charges would not have been incurred, and it is obvious that these allegations were part of a litigation strategy intended to impact negotiations by negatively affecting Consumer Attorneys' representation of Debtors and/or the amount of damages being sought. Third, Movants have not provided this Court with any basis for this allegation, calling into question the sincerity of this allegation.

Movants' third objection is that many of the tasks were improperly billed by multiple people. Based upon its own independent review, the Court agrees that this appears to be the case and, as a result, makes the following reductions:

| Date | Attorney | Time | Amt. | Task[3] | Reduction |
|---|---|---|---|---|---|
| 3/8/24 | Maxwell<br>Chami | .1<br>.5 | $35<br>$362 | Emailed re accusation of unauthorized practice of law | $35<br>0 |
| 3/8/24 | Maxwell<br>Chami | .1<br>.1 | $35<br>$362 | Reviewed email re accusation of unauthorized practice of law | 0<br>$72.50 |
| 3/8/24 | Maxwell<br>Bolos<br>Chami | .5<br>.5<br>.5 | $175<br>$325<br>$362 | Discussed settlement and litigation strategy with Chami/Bolos/Maxwell | 0<br>$325<br>$362 |
| 5/5/24 | Bolos | .5 | $325 | Reviewed and revised Ex-Parte Motion to reopen (which was formatted by paralegal Cervantes) | $325 |
| 5/6/24 | Bolos<br>Maxwell | .5<br>.5 | $325<br>$175 | Discussed revisions to Ex-Parte Motion to Reopen with Bolos/Maxwell | $325<br>0 |
| 5/8/24 | Bolos<br>Maxwell | .5<br>.5 | $325<br>$175 | Discussed revisions to Motion for Contempt with Bolos/Maxwell | $325<br>0 |
| 5/31/24 | Bolos<br>Maxwell | .1<br>.1 | $65<br>$35 | Spoke with Bolos/Maxwell about rescheduling hearing | $65<br>0 |
| 6/5/24 | Bolos<br>Maxwell | .2<br>.2 | $130<br>$70 | Discussed revisions to Response | $130<br>0 |
| 7/10/24 | Chami<br>Bolos<br>Maxwell | .3<br>.3<br>.3 | $217<br>$195<br>$105 | Discussed events of hearing and potential settlement | $217<br>$195<br>0 |
| 7/12/24 | Chami<br>Maxwell | .1<br>.1 | $72.50<br>$35 | Discussed offer for settlement | $72.50<br>0 |
| | | | | **Total Reduction for Duplicative Time** | **$2,449** |

---

[3] Some of the descriptions of the tasks have been shortened or summarized.

Movants' fourth objection is that many of the tasks billed were non-compensable ministerial tasks.  Again, the Court agrees and, as a result of its independent analysis, makes the following reductions:

| Date | Paralegal/Atty | Time | Amt. | Task | Reduction |
|---|---|---|---|---|---|
| 5/6/24 | Cervantes | .2 | $30 | Filed Ex-Parte Motion to Reopen and proposed order | $30 |
| 5/8/24 | Cervantes | .5 | $75 | Filed Motion for Contempt and accompanying documents/exhibits | $75 |
| 5/31/24 | Cervantes | .1 | $15 | Filed Notice of Appearance | $15 |
| 6/3/24 | Cervantes | .2 | $30 | Mailed service packets for Notice of Appearance | $30 |
| 6/5/24 | Maxwell | .1 | $35 | Send Reply to Bolos | $35 |
| 6/5/24 | Cervantes | .2 | $30 | Filed Reply | $30 |
| 6/7/24 | Cervantes | .2 | $30 | Sent Service Packet | $30 |
| | | | | **Total Reduction for Ministerial Tasks** | **$245** |

III.

CONCLUSION

After reviewing the Itemized Fee Statement, this Court GRANTS IN PART and DENIES IN PART Movants' objection to Consumer Attorneys' Itemized Fee Statement.  This Court finds that the $15,042.50 of fees requested by Consumer Attorneys should be reduced by $2,694, resulting in total fees awarded of $12,348.50, said amount to be paid no later than 20 days after entry of this Opinion and Order.

IT IS SO ORDERED.

**Signed on September 12, 2024**



/s/ Joel D. Applebaum
Joel D. Applebaum
United States Bankruptcy Judge